THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v.
LOUIS RAINONE, Defendant.

First District (3rd Division)   No. 86—2518

Opinion filed October 19, 1988.—Rehearing denied November 21, 1988.

Robert DeMeo, of Stillo & DeMeo, and Anthony Pinelli, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Renee Goldfarb, Assistant State's Attorneys, and Sara Dillery Hynes, Special Assistant State's Attorney, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a trial by jury, defendant, Louis Rainone, was convicted of murder and was sentenced to a term of 40 years. Defendant appeals, contending that he was denied a fair trial due to improper reference to the victim's family; improper limitation of cross-examination; and improper prosecutorial comment during its closing statement. Defendant further contends that the sentence imposed was excessive.

On June 8, 1984, Roman Rys was standing on a street corner with his girlfriend when defendant and codefendant, Gustavo Bujdud, approached the corner, each carrying a weapon. Defendant and Bujdud pointed their weapons at a group of teenagers gathered in a nearby parking lot and then proceeded further, toward the corner. They next encountered John Odle, who was standing in an alley near the corner. They pointed their weapons at Odle and defendant told him to move. The pair then crossed the street and stopped approximately 15 feet from Rys and his girlfriend. Defendant and Bujdud shot and killed Rys.

Defendant and Bujdud were apprehended by police officers responding to a radio broadcast regarding the shooting. The officers found a rifle and a shotgun in the vehicle in which the two men were traveling. Defendant and Bujdud were arrested and were taken to the police station. A lineup was conducted approximately 1½ hours after the shooting. Three eyewitnesses, John Odle, Kelly Quinn, and Michelle Angelilli, identified defendant as a gunman who had shot Rys.

Defendant was charged with murder and armed violence and was tried separately from Bujdud in a jury trial. At trial, the three eyewitnesses again identified defendant as the man who fired the shotgun at Rys. Further testimony linked the deceased, as well as some of the witnesses, with various local gangs. (Bujdud has filed a separate appeal which is pending in this court.)

The State called the deceased's father to testify as a life and death

witness concerning his son. During the course of his testimony, Miroslav Rys indicated that he and his family had emigrated to the United States from Czechoslovakia in 1968 after the Russian invasion. He gave the names of his wife and two children and the ages of his children when the family came to the United States. He further testified as to the deceased's educational and employment background, as to his intention to join the Army, and as to the deceased's possible gang affiliation.

Defendant testified in his own behalf. He stated that he had belonged to a gang and that his gang and that of the deceased were rivals at the time of the trial. Defendant denied shooting the deceased, stating that he was with Bujdud that evening but was intoxicated and had fallen asleep in Bujdud's car.

Defendant first contends that he was denied a fair trial by the introduction of evidence and comment by the prosecution regarding the deceased's family. He claims that the comments and the evidence which preceded them were a calculated attempt to prejudice defendant. The evidence and comments complained of were as follows. In his opening statement, the prosecutor made reference to the fact that the deceased's family had emigrated to the United States in 1968. The trial court overruled an objection to the comment. The prosecutor made a similar comment in his rebuttal closing argument. There he stated that defendant's father had emigrated to the United States "because of the freedoms." The trial court again overruled objections to these comments.

In addition, the deceased's father testified that he, his wife and his two children had settled in Cicero after leaving Czechoslovakia in 1968. He recited background information about the deceased including the fact that the deceased had a brother who was killed in Germany and the fact that the deceased recently had enlisted in the Army. Defendant made a continuing objection and later moved for a mistrial. The trial court overruled defendant's objection as to the family background and noted for the record that a certain amount of historical background was appropriate. The trial court then sustained the objection as to the witness' comments regarding the deceased's brother. The motion for mistrial was denied.

■ Although our courts continue to proscribe the use of evidence and remarks of this character, every mention of a victim's family does not necessarily entitle the defendant to a new trial. In many cases, particularly in those in which the death penalty is not imposed, such evidence and argument can be harmless. (*People v. Wilson* (1972), 51 Ill. 2d 302, 281 N.E.2d 626; *People v. Jordan* (1967), 38 Ill. 2d 83, 230

N.E.2d 161.) When the testimony regarding the victim's family is elicited as background information, is not unduly emphasized, and is not presented in a manner which would lead the jury to believe it material to the issue of defendant's guilt, the error, if any, in its admission is harmless. (*People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218; *People v. Smith* (1987), 154 Ill. App. 3d 837, 507 N.E.2d 543.) Conversely, there is error when testimony and evidence are presented in a manner which permits the jury to believe them to be material to the verdict. (*People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.) Such improper presentation includes testimony frequently dwelling upon the victim's family and testimony seeking to relate the defendant's punishment to the existence of the victim's family. *People v. Hope* (1986), 116 Ill. 2d 265, 508 N.E.2d 202; *People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.

■ The testimony at issue here was not unduly emphasized and was not calculated to prejudice the jury against the defendant. We do not condone the use of testimony dwelling on the victim's family, and we caution against its use. However, we do not believe that the testimony here led the jury to believe it material to defendant's guilt and thus its admission was, at most, harmless error.

Defendant also claims error in the admission into evidence of a photograph of the deceased with his mother and father. The State used the photograph in conjunction with testimony of the father in order to identify the deceased and to establish his life and death. The photograph was received into evidence over objection.

■ A photograph which accurately depicts the victim prior to his death is admissible for the purpose of identification of the deceased. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 521 N.E.2d 38.) The photograph of the deceased was used for the purpose of identification. We believe that its admission into evidence in no way prejudiced defendant.

Defendant next contends that he was denied a fair trial by the limitation of cross-examination of the State's witness regarding bias and motive. John Odle, one of the State's eyewitnesses, was not allowed to testify as to what sentence he thought he might receive for his two pending criminal charges of possession of a stolen vehicle. Odle did testify that over the course of the past two years he had met on many occasions with the State's Attorney's office and that at no time did the subject of Odle's two pending charges ever arise. The trial court refused to allow further questioning regarding any possibility that the witness believed his testimony would result in leniency in the sentencing for his own pending charges.

■ Generally, the cross-examiner is accorded great latitude but subject to the broad discretion of a trial court to preclude repetitive and unduly harassing interrogation. (*Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105.) A witness always may be cross-examined concerning those matters which would tend to show bias, motive, or willingness to testify. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 521 N.E.2d 38.) A cross-examiner may show or inquire into the fact that a witness has been arrested or charged with a crime when it reasonably would tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely. (*People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835.) Moreover, defense counsel may inquire as to whether the State's Attorney has made any promises of leniency to the witness or as to whether any expectations of special favor exist in the mind of the witness. (*People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9.) These inquiries are permissible even though calling for some degree of speculation; however, the evidence must not be remote or uncertain. (*People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9; *People v. Merz* (1984), 122 Ill. App. 3d 972, 461 N.E.2d 1380; *People v. Phillips* (1981), 95 Ill. App. 3d 1013, 420 N.E.2d 837.) Any limitation of cross-examination is within the trial court's discretion and absent a clear abuse of that discretion will not result in error. *People v. Phillips* (1981), 95 Ill. App. 3d 1013, 420 N.E.2d 837.

■ If the record reflects that the jury has been made aware of adequate areas of impeachment of the witness, the prohibition of further cross-examination does not result in error. (*People v. Lindgren* (1982), 111 Ill. App. 3d 112, 443 N.E.2d 1129; *People v. Baugh* (1981), 96 Ill. App. 3d 946, 422 N.E.2d 166.) Additionally, there is no abuse of discretion in restricting cross-examination when, as here, the jury is informed that the witness has been charged with a crime and that there has been no promise of leniency in exchange for the witness' testimony. *People v. Panus* (1979), 76 Ill. 2d 263, 391 N.E.2d 376; *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 502 N.E.2d 304; *People v. Ivory* (1985), 139 Ill. App. 3d 448, 487 N.E.2d 1035.

■ The trial court's refusal to permit defense counsel to question the witness regarding any subjective beliefs he might have regarding possible leniency in his own sentencing was not erroneous when the jury was informed of the witness' pending charges and of the absence of any promise of leniency by the State's Attorney. Further questioning of the witness with respect to the charges pending against him would have led to remote and uncertain evidence. Moreover, the jury had adequate areas of impeachment of the witness. Odle's testimony revealed various juvenile convictions, time served in a detention cen-

ter, pending criminal charges, and gang affiliation. The prohibition of further cross-examination did not deprive the jury of significant impeachment information and, accordingly, was not erroneous.

■ Moreover, even if the restriction on cross-examination was improper, any resulting error was harmless. An error in a limitation of defense counsel's cross-examination is harmless if the error did not contribute to defendant's conviction, if the evidence in the case overwhelmingly supports the conviction, or if the evidence merely would have been cumulative or duplicative. (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526.) Limitation of Odle's testimony did not contribute to defendant's conviction as the evidence does overwhelmingly support defendant's conviction.

The State presented testimony of three eyewitnesses who identified defendant both in a lineup held within two hours of the shooting and at trial as one of the men who shot the deceased. Police officers apprehended defendant and Bujdud shortly after and within blocks of the shooting as they sped away from the scene in a black Camaro. The officers recovered a double-barreled shotgun and a rifle from the trunk of the car. Ballistics tests showed that expended shells found at the scene had been fired from the shotgun. The autopsy revealed that the deceased died of shotgun wounds. There was also evidence introduced tending to demonstrate a rivalry between the deceased's gang and defendant's gang.

When weighed against defendant's claim that he was asleep in Bujdud's car when Bujdud committed the crime with another individual who resembled defendant but who fled the scene in some other manner, the State's case clearly supports defendant's conviction. Any error was harmless.

Defendant contends further that he was denied a fair trial by improper comments made by the prosecutor during closing argument.

■ Whether the prosecutor's comments constitute prejudicial error depends on whether the jury would have reached a contrary verdict had the improper comments not been made. That is, a conviction will be disturbed on review only if the remarks (1) constitute a material factor in the conviction, or (2) result in substantial prejudice to defendant. A reviewing court looks to the content of the language used, its relation to the evidence, and the effect of the argument on the rights of the accused to a fair and impartial trial. (*People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.) Applying these principles to the present case, we believe the prosecutor's comments did not contribute materially to defendant's conviction, nor did they prejudice him.

■ Defendant claims error in the prosecutor's suggestion that defendant's story was not plausible and that the story was developed at a strategy session. However, the trial court promptly sustained defendant's objection to the comment and removed any possible prejudice resulting from the remark. See *People v. Farmer* (1963), 28 Ill. 2d 521, 192 N.E.2d 916; *People v. Richard* (1980), 88 Ill. App. 3d 247, 410 N.E.2d 459.

■ Defendant's claim of error arising out of comments made by the prosecutor regarding the defense tactic of connecting the deceased with gang membership is without merit. Both defendant and the State repeatedly referred to gang membership of the deceased, defendant, and various witnesses. Thus any references to gang affiliation during closing argument were legitimate inferences from the facts and circumstances of this case. (See *People v. Howe* (1940), 375 Ill. 130, 30 N.E.2d 733.) None of the prosecutor's comments, either collectively or individually, deprived defendant of a fair trial.

Defendant's final contention is that the sentence of 40 years' imprisonment was excessive. Defendant argues that the sentence does not take into account the defendant's age or his potential to be rehabilitated.

■ Although a reviewing court is empowered to reduce sentences (107 Ill. 2d R. 615(b)(4)), the imposition thereof rests within the discretion of the trial court, and its determination will not be altered on review absent abuse of that discretion. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) The trial court, in the course of the trial and at the sentencing hearing, has an opportunity to weigh all factors and is in a better position to determine the punishment to be imposed than a court of review. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

■ The trial court here had a presentence report, it considered evidence and information offered by defendant, it heard counsel's arguments as to sentencing alternatives, and it afforded defendant an opportunity to make a statement in his own behalf. In this brutal and senseless murder, we believe the trial court properly exercised its discretion in sentencing defendant, and we will not disturb that sentence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and FREEMAN, J., concur.