THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDREW JOHNSON, a/k/a Frank Cration, Defendant-Appellant.

First District (2nd Division)   No. 1—91—1614

Opinion filed December 1, 1992.—Rehearing denied January 5, 1993.

Michael J. Pelletier and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Christine Cook, and John Guinn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Defendant Andrew Johnson was convicted by a jury of aggravated criminal sexual assault and sentenced to 28 years' imprisonment. On appeal, he asserts that he was prejudiced by improper statements made during the State's closing argument; that the circuit court improperly limited his cross-examination of the complainant concerning bias and motive; and that the circuit court erroneously allowed the introduction of evidence of a prior crime.

At trial, complainant testified that on May 17, 1989, having decided to visit a friend, she arrived at 46th and Calumet at about 9:30 p.m., but discovered that her friend was not home. She decided to return home and began walking to the bus stop at 47th and Prairie Avenue. When she reached the corner of 47th and Calumet, she saw four men, including defendant, none of whom she had seen before that night, standing in front of a liquor store.

As complainant approached the corner, defendant said, "[h]ow you doing?" to which she responded in kind. Defendant asked where she was going, and she said she was on her way home. Defendant began walking with her and told her that he was going to his sister's house to help straighten out a problem between his sister and nephew. Complainant responded that she understood his situation because she was having similar problems with her son. After walking about half a block, defendant grabbed complainant by the neck and said "Bitch, if you scream, I will kill you." Defendant then dragged her down an alley by the neck, and upon reaching a chain-link fence, began beating her. He grabbed her hair, bit her nose, and ordered her to jump the fence.

After they climbed over the fence, defendant dragged complainant about 20 feet to an area beneath the porch of an abandoned building. Defendant made her jump into a basement approximately four feet below and then followed her. He grabbed her by the neck and ordered

her to take off her clothes; she stripped from the waist down. When she began to struggle, defendant struck her in the stomach, forcing her to the ground. After defendant pulled his pants and underwear down to his ankles, he forced her to engage in both vaginal and oral intercourse for approximately two hours. Defendant continued to pull her hair, and strike her on the head and stomach. After approximately two hours, defendant suddenly slumped and fell asleep, lying motionless atop complainant.

Too scared to move, complainant waited approximately 30 minutes before she attempted to escape. She slid out from under defendant, grabbed her clothes, and ran into the alley where she dressed. She then ran from the alley and flagged down a police squad car on Prairie Avenue.

Complainant testified that she thought that defendant was high on drugs or alcohol, because he smelled of alcohol, slurred his speech, and walked slightly unbalanced. She admitted that she had been addicted to both cocaine and alcohol, but denied using either that day. She explained that she would normally use cocaine about three times a week, spending $100 to $300 each week, and that she supported her habit with allowances from her parents and boyfriend. She stated that she had not used cocaine or alcohol for six months prior to the trial. She also stated that she could not remember if she told the police officer that she worked in "sales."

Officer Thomas Scott of the Chicago police department testified that on May 17, 1989, at approximately 11:30 p.m., he saw complainant running towards his squad car, waving her arms frantically. Complainant's clothes were disheveled and her face was bloody around her nose. She told him that she had just been raped under a porch and that the offender was still there. Complainant then led him to the basement, where, with his flashlight, he saw defendant sleeping on top of a blue jacket and a cardboard box; defendant was naked from the waist down with his pants around his ankles. He woke defendant, who made no attempt to run away. At that time, complainant identified defendant as her assailant and Scott placed him under arrest and advised him of his rights.

On cross-examination, Scott testified that when complainant approached his squad car there was an odor of alcoholic beverages and he believed that she had been drinking. He also stated that her clothes were dirty and wrinkled, but they were not torn.

Photographs of the marks on complainant's nose and of scratch marks and injuries to her back were introduced into evidence. No other medical evidence of the sexual assault was introduced.

The State also introduced the testimony of Z.M. She testified that in the early morning of September 22, 1984, she exited a bus at 79th and King Drive with many other people, including defendant. As she walked down King Drive, she noticed defendant walking alone slightly ahead of her. As she crossed the street, she passed defendant because he had slowed his pace.

When Z.M. reached an ice cream parlor, defendant grabbed her around the neck. As she struggled, defendant struck her in the eye. He then dragged her half a block toward an alley, telling her, "Bitch, shut up." Upon reaching a gangway in the alley, defendant pushed her to the ground, ordered her to be quiet, and struck her in the face. When Z.M. began to cry and scream, defendant tried to choke her, but she was able to free herself enough to breathe. As he held her by the neck, defendant pulled down her pants and underwear. Defendant then dropped his pants to his ankles and proceeded to place his penis into her vagina. Defendant told her to "open up, open up" and continued choking and hitting her. Defendant also bit her on the breast during the rape, and on the wrist when she tried to remove his arm from her neck. After Z.M. heard four or five gunshots, two police officers appeared, told defendant to "freeze," and placed him under arrest.

The State introduced photographs of Z.M.'s bite wounds. Defendant objected to their admission on the ground that they were highly prejudicial and of no probative value, because defendant was not being tried for that particular crime. The State argued that the pictures corroborated Z.M.'s testimony that she was bitten. The circuit court overruled the objection, finding that the photographs corroborated the testimony that she had been bitten, which was a common feature of both cases.

At the conclusion of Z.M.'s testimony, the circuit court instructed the jury that the evidence could be considered only for the limited purpose of resolving the issue of defendant's intent, motive, and design. The State then rested and defendant's motion for directed verdict was denied.

Defendant's case in chief consisted entirely of one stipulation; that Officer Scott would testify that on the night in question, complainant told him she worked in "sales."

During closing arguments, the defense argued to the jurors that complainant's testimony was filled with lies and that they should not believe her. The defense pointed out the inconsistencies between her testimony and Scott's, particularly emphasizing the contradiction as to whether she had been drinking that night. The defense also stressed the contradiction between her statement that she was in

"sales" and her testimony that she could not remember what she had said. The defense questioned complainant's ability to refrain from drugs or alcohol on that night, since she was an admitted addict. Defense counsel stated that "[s]he is an addict, but conveniently she testifies that this evening she didn't do any." Defense counsel stated that he was not calling her a liar merely because she was a cocaine addict, but told the jurors to ask themselves "why would a crack cocaine addict walk with a stranger at night on a dark street engaging him in conversation when she saw that he was high?" He asserted that complainant had consented to sex with defendant and later fabricated the claim that she had been raped. He also argued that since there was no medical evidence, and complainant's testimony was contradicted by Scott, there was no credible evidence that a rape occurred.

In rebuttal, the State reminded the jury that defendant, not the complainant, was on trial. The State told the jury that "[s]he is not being tried for being a cocaine addict *** or being an alcoholic." Similarly, the State told the jury to read the instructions that the judge would provide to see that no special exceptions were made for witnesses who are drug addicts or lie about their employment.

After the closing arguments, the court gave the jury instructions, including one explaining that the other crime evidence could be considered only for the issue of intent, motive, or design. The jury found defendant guilty of aggravated criminal sexual assault. Defendant's motion for a new trial was denied and the court sentenced him to 28 years' imprisonment.

On appeal, defendant first contends that the State engaged in unfair methods during its closing arguments, thereby denying him a fair trial. Defendant asserts that the State misled the jury by arguing that questions of complainant's credibility should be considered by them only if the court's instruction directed them to do so. Defendant takes issue with several of the prosecutor's statements: "look at the instruction, does it say if you lie about your employment that it does not mean you can be raped?"; "[t]he fact that there was no medical evidence, that does not mean that this person walks free"; and "[y]ou will look throughout all of those instructions *** and you will not find one instruction that says it is okay to rape a cocaine addict."

Defendant claims that these statements were prejudicial because they were a misstatement of the law and they relied on the court as authority in support of the State's argument. The State responds that no misstatement of the law occurred, but rather the prosecution merely "directed the jury to the court's instructions to show them that no *** exception[s] existed."

The law is well settled that a prosecutor is entitled to wide latitude when making a closing argument. (See *People v. Cisewski* (1987), 118 Ill. 2d 163, 175, 514 N.E.2d 970, 976; *People v. Morrison* (1985), 137 Ill. App. 3d 171, 184, 484 N.E.2d 329, 338.) Similarly, the scope of permissible argument is within the sound discretion of the circuit court. (*People v. Lewis* (1990), 198 Ill. App. 3d 976, 982, 556 N.E.2d 697, 701.) In order to constitute reversible error, the prosecutor's remarks must have caused substantial prejudice to the accused, such that the jury would have reached a different result if not for those remarks. (*People v. Morgan* (1986), 112 Ill. 2d 111, 132, 492 N.E.2d 1303, 1311, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 180, 107 S. Ct. 1329.) When assessing an alleged impropriety, a reviewing court must examine the closing arguments of both the State and the defendant in their entirety and the complained-of remarks in their proper context. *Cisewski*, 118 Ill. 2d at 175-76, 514 N.E.2d at 976.

In *People v. Turner* (1989), 128 Ill. 2d 540, 539 N.E.2d 1196, *cert. denied* (1989), 493 U.S. 939, 107 L. Ed. 2d 326, 110 S. Ct. 337, the supreme court affirmed a death sentence even though the prosecutor stated in his rebuttal argument that he " 'could never exaggerate enough to be a good defense attorney.' " (*Turner*, 128 Ill. 2d at 561, 539 N.E.2d at 1205.) The court held that although it is generally not permissible to characterize defense counsel as unethical, the statement was not improper because it was made in response to an overexaggerated story told by the defense. *Turner*, 128 Ill. 2d at 561, 539 N.E.2d at 1205.

Similarly, in *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858, the court found no error in a prosecutor's statement that he personally believed the defendant was guilty when the defense counsel had argued that even the prosecution was not persuaded beyond a reasonable doubt. (*Vriner*, 74 Ill. 2d at 344, 385 N.E.2d at 677.) The court held that since the defendant "invited the complained-of statement, *** [he] cannot, therefore, rely on such statement as error." *Vriner*, 74 Ill. 2d at 344, 385 N.E.2d at 677.

■ We find inapposite *People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41, relied upon by defendant, for there the prosecutor's argument improperly placed the focus on the defense attorneys' objectives rather than the evidence in the case. As in *Turner* and *Vriner*, the statements at issue in the instant case were made in response to defendant's closing argument. Defendant argued primarily that complainant was not a credible witness because of questions raised about her drug addiction and employment status. By focusing on these is-

sues, defendant invited the State to respond in its rebuttal argument. Moreover, a reading of the statements in their context shows that the State was not attempting to mislead the jurors by directing them to the instructions, but rather simply pointing out that no exceptions existed.

Defendant also claims that the prosecutor improperly shifted the burden of proof when he argued, over defendant's objection, that the jury "[had] to choose to believe" Z.M.'s testimony, because defendant did not cross-examine her. While it is true that the State may not draw the jury's attention to the defendant's failure to testify (see *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; *People v. Burton* (1969), 44 Ill. 2d 53, 254 N.E.2d 527), the prosecution may properly refer to the fact that a witness' testimony was uncontradicted, since it is merely an accurate summary of the evidence. (*People v. Connolly* (1989), 186 Ill. App. 3d 429, 437, 542 N.E.2d 517, 522, *appeal denied* (1990), 128 Ill. 2d 666, 548 N.E.2d 1073.) Similarly, our supreme court has held that there is a "great deal of difference between an allegation by the prosecution that defendant did not prove himself innocent and statements questioning the relevance or credibility of a defendant's case." *People v. Phillips* (1989), 127 Ill. 2d 499, 527, 538 N.E.2d 500, 511, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 798, 110 S. Ct. 3290.

In the instant case, the State's argument pointed out that there was no indication that anything Z.M. said was untruthful. Moreover, the court instructed the jury that the State bore the burden of proving defendant guilty beyond a reasonable doubt and that defendant was not required to prove his innocence. We conclude that defendant was not denied a fair trial as a result of the prosecutor's remarks.

Defendant next contends that the circuit court committed reversible error when it barred him from cross-examining complainant on issues involving her bias and motive to testify. Prior to trial, defendant sought permission to question complainant about two criminal charges which had been stricken with leave to reinstate prior to the events in question. Specifically, defendant sought to establish bias and motive to testify by cross-examining complainant regarding a 1988 forgery charge and a 1989 theft charge, both of which were stricken with leave to reinstate before the sexual assault occurred. The State, however, made a motion *in limine* to prevent him from doing so. Without argument from defendant, the circuit court granted the motion, finding no concerns of promises of leniency from the prosecution in exchange for complainant's testimony because there were no pending

cases against her. Defendant neither challenged the ruling at trial, nor in his post-trial motion seeking a new trial.

In order to preserve a question for appellate review, both a contemporaneous objection and a written post-trial motion raising the issue are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) The failure to properly preserve an issue will limit review to certain constitutional issues, questions on the sufficiency of the evidence, and issues of plain error. (*Enoch*, 122 Ill. 2d at 190, 522 N.E.2d at 1132.) The plain error doctrine will apply when the evidence is closely balanced, or if the accused is denied a fair trial as a result of the error. *People v. Turner* (1989), 128 Ill. 2d 540, 555, 539 N.E.2d 1196, 1202, *cert. denied* (1989), 493 U.S. 939, 107 L. Ed. 2d 326, 110 S. Ct. 337.

■ In the instant case, the plain error doctrine does not apply. The evidence was not closely balanced, as no evidence contradicted complainant's testimony that she was sexually assaulted, while there was substantial corroborative evidence. Moreover, defendant was able to establish complainant's bias and motive through cross-examination concerning other areas. The court's ruling prevented him from attacking complainant's credibility only with one type of evidence that the court considered irrelevant. Defendant was not denied a fair trial as a result of this restriction on his cross-examination of complainant.

Further, defendant's contention fares no better under plain error analysis. Defendant argues that the charges could have been reinstated anytime during the three-year limitation period (Ill. Rev. Stat. 1989, ch. 38, par. 3—5; *People v. Reese* (1984), 121 Ill. App. 3d 977, 988, 460 N.E.2d 446, 453), and cites *People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9, and *People v. Reese* as authority for the proposition that he should have been allowed to question complainant about the stricken charges.

Although a witness may be cross-examined on those matters tending to show bias or motive to testify (*People v. Rainone* (1988), 176 Ill. App. 3d 35, 40, 530 N.E.2d 1026, 1029), a party may be restricted from doing so if the evidence is remote or uncertain. (*Reese*, 121 Ill. App. 3d at 988, 460 N.E.2d at 453; see also *Olden v. Kentucky* (1988), 488 U.S. 227, 232, 102 L. Ed. 2d 513, 520, 109 S. Ct. 480, 483 (recognizing that reasonable limitations may be placed on a defendant's inquiry of potential bias on issues that are only "marginally relevant").) Any limitation of cross-examination is within the circuit court's discretion, and absent a clear abuse of that discretion, no error will be found. *Rainone*, 176 Ill. App. 3d at 40, 530 N.E.2d at 1029-30.

While defendant is correct in asserting that *Triplett* and *Reese* stand for the proposition that a defendant can suffer prejudice when prevented from questioning a witness about potential bias from stricken charges, he fails to make the distinction between charges that are too remote and those that are not. In the instant case, both of complainant's charges were stricken before the sexual assault occurred. The circuit court's implicit finding that the stricken charges were too remote to be relevant was not erroneous as an abuse of the court's discretion. In addition, defendant suffered no prejudice because, as in *Reese*, he had adequate opportunity to challenge complainant's credibility.

Moreover, unlike in *Triplett*, complainant was not a reluctant witness. Indeed, she initiated the prosecution by reporting the incident as soon as she saw a police officer, immediately after the offense occurred. For the foregoing reasons, the circuit court did not abuse its discretion when it restricted defendant from questioning complainant about the stricken charges.

■ Defendant also contends that the circuit court improperly precluded him from questioning complainant on cross-examination regarding the custody of her children after she lost her public assistance. The circuit court sustained an objection based upon relevancy. Because the scope of cross-examination is within the sound discretion of the circuit court, its ruling will not be overturned unless there has been an abuse of discretion resulting in manifest prejudice to the defendant. (*People v. Kluxdal* (1991), 225 Ill. App. 3d 217, 225, 586 N.E.2d 701, 707, *appeal denied* (1992), 144 Ill. 2d 639, 591 N.E.2d 27.) We find no abuse of discretion here.

Finally, defendant contends that he was denied a fair trial when evidence of the prior sexual assault was presented to the jury. Defendant asserts that the evidence was introduced to show that he had a propensity to commit sex crimes and that the State improperly argued that evidence in its closing argument.

Prior to trial, defendant made a motion *in limine* to bar the introduction of evidence regarding the sexual assault committed in 1984. Defendant argued that the prior crime and the instant case were too dissimilar to fit into the *modus operandi* exception. The State countered that under Illinois law, as long as enough similarities exist to make the crimes distinctive, such evidence is admissible for the limited purposes of intent, motive, and design. After noting several similarities between the two cases, the circuit court ruled that the prior crime evidence was admissible to establish motive, intent, and knowledge.

When Z.M. was called as a witness during the trial, defendant did not renew his objection to her testimony, nor did he specifically attribute any error to its introduction in his motion for a new trial. Defendant did, however, assert in his motion that he was prejudiced by the State's closing argument that defendant followed "a specific pattern" because it mischaracterized the other crime evidence as evidence of his propensity to commit a particular crime.

Defendant first asserts that the evidence of the prior crime served no valid purpose and merely persuaded the jury that he was predisposed to commit a certain type of crime. The State responds that the evidence was admitted solely for the purpose of determining defendant's state of mind at the time in question. The State argues that since defendant claimed that complainant consented, the central issue was whether defendant had an innocent frame of mind.

It is axiomatic that evidence of other crimes is not admissible as proof of a defendant's propensity to commit crime. (*People v. Kokoraleis* (1989), 132 Ill. 2d 235, 256, 547 N.E.2d 202, 212, *cert. denied* (1990), 497 U.S. 1032, 111 L. Ed. 2d 804, 110 S. Ct. 3296.) Evidence of other crimes may be introduced, however, if it proves a fact in issue, or if it shows *modus operandi*, identity, motive, or intent. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, 823-24, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145.) Furthermore, whenever evidence of another crime is offered, there must be some similarity between the other crime and the crime charged in order to ensure that it is not being used to establish the defendant's criminal propensity. (*People v. Bartall* (1983), 98 Ill. 2d 294, 310, 456 N.E.2d 59, 67.) The requisite extent of the similarities differs, however, with the purpose for which the evidence is offered. When evidence of prior crimes is offered to prove either *modus operandi* or that the crime charged was part of a common design, "there must be a high degree of identity between the facts of the crime charged and the other offense." (*People v. Illgen*, 145 Ill. 2d 353, 372-73, 583 N.E.2d 515, 523.) By comparison, when the evidence is offered to prove criminal intent or the lack of an innocent frame of mind, general similarities will suffice to justify admission. *Illgen*, 145 Ill. 2d at 373, 583 N.E.2d at 523.

Other crime evidence may be admitted to prove a defendant's criminal intent. In *People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515, the supreme court held that the circuit court did not abuse its discretion when it allowed the State to admit other crime evidence to negate the defendant's assertion that a shooting was accidental. (*Illgen*, 145 Ill. 2d at 364, 583 N.E.2d at 519-20.) In *Illgen*, the State of-

fered evidence of prior physical abuse to prove that the defendant did not have an innocent frame of mind when he shot his wife in the face. The supreme court upheld the circuit court's admission of the evidence because it was probative of the issue of the requisite mental state for murder since it negated the likelihood that the shooting was accidental. (*Illgen*, 145 Ill. 2d at 366, 583 N.E.2d at 522.) The court held that absent a clear abuse of discretion, it could not rule that the probative value of the evidence was outweighed by its prejudicial effect because the circuit court was better able to determine the effect of the evidence on the jury. (*Illgen*, 145 Ill. 2d at 375-76, 583 N.E.2d at 524-25.) Moreover, the court stated that the limiting instruction "substantially reduced any prejudicial effect created by the admission of the prior-offense evidence." (*Illgen*, 145 Ill. 2d at 376, 583 N.E.2d at 525.) The court noted that faith in the jury to follow instructions and properly separate issues is "the cornerstone of the jury system." *Illgen*, 145 Ill. 2d at 376, 583 N.E.2d at 525.

■ In the instant case, defendant claims that the other crime evidence served no valid purpose and merely persuaded the jury that he was criminally predisposed. However, as demonstrated by *Illgen*, we believe that the evidence is probative of defendant's intent. Since defendant claims that complainant consented to his advances, it was appropriate under *Illgen* to admit the prior crime evidence and allow the jury to determine if he acted with an innocent frame of mind. The two crimes are similar enough to satisfy the less stringent test that is applied when evidence is admitted to prove intent. Both victims were abducted while walking alone on the street and taken to another location; both were grabbed from behind by the neck; and both women were beaten, choked and bitten. Moreover, as in *Illgen*, the circuit court instructed the jury to limit their consideration of the evidence to issues of motive, intent, and design. Therefore, it cannot be said that the prejudicial effect of the evidence outweighed its probative value.

Defendant relies on *People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667, for his contention that the evidence was improperly admitted. In *Barbour*, this court reversed a conviction and remanded the case for a new trial when it held that no proper purpose existed to admit evidence of two earlier "date rapes" in a prosecution for "date rape." The State offered the evidence to prove the defendant's *modus operandi* and thereby establish the identity of the offender. The court held that such evidence was irrelevant to the issue of identity because the defendant admitted having intercourse with all three women, thereby making the issue moot. (*Barbour*, 106 Ill. App. 3d at 1000, 436 N.E.2d at 673.) Moreover, the court ruled that the al-

leged rapes were too dissimilar to satisfy the stringent test of admission for *modus operandi* evidence. (*Barbour*, 106 Ill. App. 3d at 1000, 436 N.E.2d at 672.) The court did recognize, however, that other crime evidence which shows intent is admissible. *Barbour*, 106 Ill. App. 3d at 1001, 436 N.E.2d at 673.

Defendant's reliance on *Barbour* is misplaced. Unlike the prosecution in *Barbour*, the State in the instant case did not offer the evidence as proof of *modus operandi*, but rather as proof of the absence of an innocent frame of mind. Thus, because such evidence is admissible to prove intent, the logic of *Barbour* is inapplicable to this case. Therefore, we hold that no abuse of discretion occurred and that the evidence of the prior crime was properly admitted even though identity was not in issue.

Defendant next contends that he was unfairly prejudiced by the State's closing argument when it argued to the jury that the evidence showed "a common pattern," because the evidence was not admitted for the purpose of establishing *modus operandi*. The State responds, however, that defendant did not object to the statement at trial and that therefore the issue is waived for review. The State argues in the alternative that any possible error was merely harmless because the jury was properly instructed to limit its consideration of the evidence to intent, motive, and design.

■ A court will not reverse a conviction as a result of an improper argument unless the statements resulted in substantial prejudice or they served no purpose other than to inflame the jury. (*People v. Lewis* (1990), 198 Ill. App. 3d 976, 984, 556 N.E.2d 697, 702.) Moreover, a properly instructed jury is assumed to be able to separate the issues and reach a correct result. (*People v. Illgen* (1991), 145 Ill. 2d 353, 376, 583 N.E.2d 515, 525.) We conclude that defendant suffered no prejudice as a result of the State's argument.

Defendant's last contention is that he was prejudiced by the publication to the jury of photographs of Z.M.'s injuries. He claims that the probative value of the pictures is outweighed by their prejudicial effect and that their publication gave Z.M.'s testimony undue emphasis. The State responds that the photographs were properly published since they corroborated Z.M.'s testimony.

■ The weighing of the probative value against the prejudicial effect of a particular piece of evidence is within the sound discretion of the circuit court, and the decision as to which items of evidence should be published to the jury will not be disturbed absent a clear showing of abuse of that discretion. (See *People v. Lucas* (1989), 132

Ill. 2d 399, 439, 548 N.E.2d 1003, 1019-20.) In the instant case, we find no abuse of that discretion.

For all the reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

HARTMAN, P.J., and McCORMICK, J., concur.