THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SYLVESTER DUKES *et al.*, Defendants-Appellants.

First District (6th Division)   Nos. 1—92—0239, 1—92—0278 cons.

Opinion filed May 13, 1994.

Rita A. Fry, Public Defender, of Chicago (Lynn Flanagan Wilson, Assistant Public Defender, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Matthew McQuaid, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

After a jury trial, Sylvester Dukes was convicted of first degree murder and attempted first degree murder. His brother and codefendant, Terry Dukes, was convicted of first degree murder on a theory

of accountability. Sylvester was sentenced to the Illinois Department of Corrections for concurrent terms of 55 years for murder and 30 years for attempt. Terry was sentenced to the Illinois Department of Corrections for 35 years. We consolidated their appeals. Sylvester argues that the second degree murder statute is unconstitutional. Terry contends that the evidence was insufficient to show his guilt. Sylvester and Terry both argue that they were prejudiced by the prosecutor's closing argument.

On January 19, 1990, Sylvester shot and killed Roselle Edwards and wounded Roselle's niece, Enona Edwards. The State's theory of the case, as presented in its opening statement, was that Terry and Sylvester planned to shoot Roselle as an act of gang retaliation because Roselle forced one of their friends to leave a party.

Roselle owned a small apartment building in Chicago. He rented a first-floor apartment to his nephew Stanley Edwards and the second-floor apartment above Stanley to his other niece, Angela Lyons. Enona testified that Lyons had approximately 10 people in her apartment on the evening of January 19; the guests were playing cards and drinking beer in the kitchen. Enona, Roselle, Roselle's nephew Rickey Edwards, and Angela were in Stanley's apartment at approximately 11 p.m. when they heard noise coming from Angela's apartment. The four went upstairs to investigate.

Enona and several other witnesses explained that Frank Patrick and a woman named Stephanie were fighting in Angela's kitchen. Enona testified that Roselle "grabbed" Frank "in the collar" and told him to stop fighting. Frank and Roselle then hit each other. At this point in the argument, Donald Patrick entered Angela's kitchen and told Roselle to leave Frank alone. Stephanie was Donald's girl friend; Frank and Donald were brothers. Donald and a man named Eric began fighting. Enona explained that Roselle tried to push Donald and Eric apart, and Donald left the apartment. When Donald left, he was "upset, mad." Enona did not see Donald again that night.

The guests began talking and cleaning up the kitchen. Approximately five minutes after Donald left, Sylvester "bust in the door, kicked in the door" to Angela's apartment. Enona testified that Terry and a light-skinned man entered the apartment with Sylvester. Sylvester said "this is a G thing" and Sylvester and Terry "went straight towards [Roselle]." Several witnesses testified that Sylvester was a member of the Gangster Disciples street gang, and one witness also stated that Terry was a Gangster Disciple. Sylvester hit Roselle once in the face with his fist, then stepped away from Roselle and "the other two took over." Terry had a brick when he entered the kitchen, and he hit Roselle in the head with the brick three times,

using "a lot of force." Sylvester "stood back watching" Terry hit Roselle.

Enona "started screaming and hollering" and ran toward Sylvester. Sylvester pushed Enona down, and "by the time [Enona] got up, *** [Sylvester] was raising up" a gun. Sylvester pointed the gun directly at Enona and shot her. Enona was approximately three feet away from Sylvester when he fired. The bullet entered Enona's shoulder.

After shooting Enona, Sylvester "turned and shot [Roselle]." Enona testified that Roselle did not pull out a gun at any time during this fight. After the first shot was fired at Roselle, a woman named Val grabbed Enona and pulled her out of the kitchen. The two women hid in the bathroom closet. From the bathroom, Enona heard "about four more shots." Val and Enona remained in the bathroom until the police entered the apartment and took Enona to Cook County Hospital.

Rickey and Sylvester's girl friend, Katie Hall, also testified for the State. Hall knew Angela and Roselle and went to the party at Angela's apartment on January 19. On her way into the building, Hall saw her brother, Sylvester, and a "couple more guys" outside the building. Sylvester later entered the building and was talking to Michael Brown in the second-floor hallway. Sylvester did not enter Angela's apartment at that time, but left the second floor.

In Angela's apartment, Rickey and Hall observed Roselle trying to break up the fight between Frank and Stephanie. Hall also later heard Roselle tell Donald and Eric not to argue. Hall did not see anyone leave the apartment after the fighting. Similarly, Rickey was not sure whether Donald left the apartment after the argument. Hall and Rickey both were in the apartment when Sylvester and Terry "kicked in" the door. Hall knew Sylvester and Terry "kicked in" the door to Angela's apartment because "wood flew off the back of the door."

Terry entered the room first, followed by Sylvester and a man Hall and Rickey did not know. Rickey described him as "light-skinned." Rickey explained that the three "went straight to Ro[selle], *** and started hitting him." Hall heard Sylvester say "Gangster thing" as he entered the room; she understood this to refer to a gang. Rickey also heard "yelling in the door talking G thing or Gangster thing." Hall saw Terry hit Roselle in the head with the brick. Rickey thought the men were using an object when hitting Roselle's head, but could not see the object. Both Hall and Rickey saw Sylvester shoot Enona. Next, Sylvester shot Roselle in the chest and then in the head. Hall testified that Sylvester fired approximately five times.

According to Rickey, Roselle did not have a gun. After Sylvester shot Roselle in the head, Rickey ran to the den and hid under bunk beds. He heard three more shots.

Assistant Cook County Medical Examiner Tae An testified that Roselle died as a result of multiple gunshot wounds. According to An, several lacerations on Roselle's head "could be" consistent with his being hit by a brick.

Several police officers testified for the State. Officer Gorman and his partner responded to a radio message that several shots had been fired in the apartment. When he entered the apartment, Gorman noticed that the wood frame on the door was broken. Gorman and his partner eventually arrested Terry and Sylvester. Officer Heldak testified that she and her partner took a brick that was on the floor near Roselle's head and inventoried the brick. She explained that pictures taken of the crime scene show this brick near Roselle's head. Finally, evidence technician Ricks testified that he recovered four bullets from the scene but that the gun was never recovered. Ricks did not test the brick from the scene, but remembered seeing the brick in the kitchen. Ricks did not notice anything unusual about the back door.

Michael Brown and Donald Patrick testified for the defendants. It was stipulated that Brown had two prior convictions for felonies. Brown lived on the second floor in Roselle's building in an apartment behind Angela's apartment. He had a discussion with Sylvester in the hallway on the evening of January 19 and saw Sylvester enter Angela's kitchen. Brown heard "rumbling" from Angela's kitchen and helped to break apart fights between Stephanie and Frank and Donald and Eric. Brown heard Sylvester say "I'll be back, I'm going to get my folks" and saw Sylvester leave the apartment. Brown explained that members of the Gangster Disciples, as well as members of several other gangs, are folks.

Approximately 20 minutes after Sylvester left, Sylvester and Terry came into the kitchen. They did not kick in the door, but simply pushed it open. According to Brown, Sylvester hit Roselle and then Terry began hitting Roselle with a brick. Roselle reached back and "went to his coat," although Brown did not see Roselle retrieve a gun. Brown testified that Roselle usually carried a gun. Next, a shot was fired, but Brown did not see who fired the shot.

Donald testified that he had been "partying" in the apartment for several hours when Frank and Stephanie began arguing. Roselle tried to break up this argument. Meanwhile, Donald and Eric began fighting, but stopped the fight on their own. Next, according to Donald:

"[A]ll I seen was Roselle pull up a gun, and he fired it. And the Dukes—the Duke boys came in and threw a brick. They was in the house already. They threw a brick, and the gun dropped, and I seen [Sylvester] pick it up."

Donald did not see what happened after Sylvester picked up Roselle's gun, but he heard several shots. He explained that Roselle pulled the gun "from his back." Donald testified that he told the grand jury he saw Roselle with a gun. However, the parties stipulated that Donald did not mention that Roselle had a gun when he testified before the grand jury. Also, the assistant State's Attorney read from part of the grand jury transcript indicating that Donald told the grand jury Sylvester had the gun and Sylvester shot Roselle. Finally, Detective Hanrahan, who testified for the defense, admitted that Donald did not tell him Roselle had a gun when Hanrahan interviewed Donald after the shooting.

The jury found Sylvester guilty of both the attempted murder of Enona and the first degree murder of Roselle. The jury found Terry not guilty of the attempted murder of Enona but guilty of the first degree murder of Roselle.

■ Citing *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, Sylvester first argues that the second degree murder statute is unconstitutional because the statute and instructions make it impossible for a defendant claiming reasonable self-defense under section 7—1 of the Criminal Code to be convicted of second degree murder based on unreasonable self-defense under Code section 9—2(a)(2). (Ill. Rev. Stat. 1989, ch. 38, pars. 7—1, 9—2(a)(2).) We rejected this contention in *People v. Truss* (1993), 254 Ill. App. 3d 767, 626 N.E.2d 1175, and we see "no reason to revisit this all-too-familiar challenge here." *Truss*, 254 Ill. App. 3d at 779.

Sylvester also argues that, by placing the burden of proving "partial exoneration or justification" on the defendant, the second degree murder statute asks the defendant to disprove a portion of the offense of first degree murder. This argument has been thoroughly rejected by the courts of this State. (See, *e.g.*, *People v. Newbern* (1991), 219 Ill. App. 3d 333, 579 N.E.2d 583; *People v. Clark* (1991), 207 Ill. App. 3d 439, 565 N.E.2d 1373; *People v. Buckner* (1990), 203 Ill. App. 3d 525, 561 N.E.2d 335.) Accordingly, we find no merit in Sylvester's argument.

■ Terry argues that the evidence did not sufficiently show that he was part of any plan or scheme to kill Roselle or that he intended to commit murder. We hold that the State sufficiently proved Terry intended to commit an offense which resulted in murder.

A defendant is legally accountable for the acts of another when

he "solicits, aids, abets, agrees or attempts to aid, such other person" in the commission of an offense "with the intent to promote or facilitate such commission." (Ill. Rev. Stat. 1989, ch. 38, par. 5—2(c).) When the evidence shows that a defendant "planned and intended to commit *some* offense, \*\*\* [it] is sufficient to hold him accountable" for a murder which results from the concerted acts toward that offense. (*People v. Moreno* (1992), 238 Ill. App. 3d 626, 633-34, 606 N.E.2d 514.) The existence of intent may be "implied or inferred from the character of the [defendant's] act[s]." (*People v. Muzard* (1991), 210 Ill. App. 3d 200, 214, 569 N.E.2d 26.) Further, "the fact finder may infer defendant's accountability from his approving presence at the scene of the crime [citation] and from evidence of conduct showing a design on defendant's part to aid in the offense." *People v. Roppo* (1992), 234 Ill. App. 3d 116, 126, 599 N.E.2d 974.

When viewed in the light most favorable to the prosecution (see *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267), the evidence in this case shows that Terry actively participated in the murder and that the jury could reasonably infer his intent to commit an offense. The only evidence that lends credence to Terry's position is the testimony from Donald. The jury did not have to believe Donald and ignore the State's witnesses, especially in light of the clear impeachment of Donald and the damaging nature of the testimony by Brown, one of Terry's own witnesses.

According to Enona, Rickey, and Hall, Terry helped Sylvester in a violent entry into Angela's kitchen while carrying a brick. The jury was free to draw several reasonable inferences about Terry's intent to commit an offense with Sylvester based on this forced entry into the apartment. Enona, Rickey, and Hall all testified that the three intruders went straight toward Roselle, further supporting the inference that this attack was planned. Then, after Sylvester hit Roselle once and stepped aside, Terry brutally hit Roselle in the head with the brick. Even one of Terry's witnesses, Brown, testified to this attack. Finally, Enona explained that Sylvester stood back and watched Terry beating Roselle, leading to the inference that they had planned to harm Roselle. In this case, Terry gave more than an "approving presence" at the scene of Roselle's murder; he actively participated in what appeared to be a planned attack. (See *Roppo*, 234 Ill. App. 3d at 126.) We judge that the evidence amply supports Terry's conviction for first degree murder.

■ Terry and Sylvester both argue that the prosecutor materially contributed to their convictions by implying that defense counsel fabricated their defense. In her rebuttal closing argument, the assistant State's Attorney stressed that Donald did not tell Detective Hanrahan or the grand jury that Roselle had a gun, and argued:

"You were here Tuesday. You were here Wednesday, did he tell anybody. Uhn-uhn. He sat up there and said *the first time he ever spoke to counsel was yesterday. And that's the first time anybody ever heard that Roselle had a gun.* Yesterday." (Emphasis added.) The prosecutor continued her argument: "Didn't tell the police or grand jury. And told counsel and you yesterday. \*\*\* Why? Things were looking pretty bad." Both defense attorneys objected to this comment, and the judge sustained the objection.

Next, the judge held a sidebar. He told the prosecutor that "it would be easier if you did, to suggest that you are talking about the witness." The judge said that he would allow the defense attorneys to explain that they filed a self-defense answer a year before trial, stating "I will give you the opportunity to tell them or I will." Then, the following occurred:

"THE JUDGE: \*\*\* If you have any other words you wish to use I'll be glad to help you use them as to how we can get over the fact you're talking about the witness.

ASSISTANT STATE'S ATTORNEY: I'll be happy to go out and say I am only speaking about Donald Patrick.

\*　\*　\*

THE JUDGE: \*\*\* Do you [defense attorneys] want to suggest any other ways?

\*　\*　\*

You don't have to \*\*\* mention an answer. You can mention you were aware self-defense would be an issue in this case all along. I'll let you use any word you want or I'll do it.

ASSISTANT STATE'S ATTORNEY: I'll do it, Judge."

Before the jury, the prosecutor stated, "Granted the defendants have been alleging self-defense throughout" and then argued that despite the defendants' position, "only yesterday did [Donald] finally decide he was going to tell his little fairy tale about what happened that night."

Terry and Sylvester contend that the prosecutor's statements, especially the comment about "things looking pretty bad," improperly created the inference that their attorneys told Donald how to testify. It is well settled that "[i]mproper arguments during closing argument do not warrant reversal unless the argument as a whole was so seriously prejudicial that it deprived the defendant of a fair trial" or constituted a material factor in the conviction. (*People v. Jimenez* (1989), 191 Ill. App. 3d 13, 23, 547 N.E.2d 616; see also *People v. Johnson* (1987), 119 Ill. 2d 119, 518 N.E.2d 100.) Moreover, we note that a closing argument stressing that the "defendant's story was not plausible and \*\*\* was developed at a strategy session" was held not

materially prejudicial where "the trial court promptly sustained defendant's objection to the comment and removed any possible prejudice resulting from the remark." *People v. Rainone* (1988), 176 Ill. App. 3d 35, 41-42, 530 N.E.2d 1026; *People v. Ferns* (1993), 247 Ill. App. 3d 278, 617 N.E.2d 209; *People v. Holloway* (1983), 119 Ill. App. 3d 1014, 457 N.E.2d 466.

Terry and Sylvester argue that *People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41, controls this case. In *Emerson*, the prosecutor "suggested that the defense attorneys created the defenses themselves and had suborned perjury" when he stated that a defense attorney "laid down a smokescreen 'composed of lies and misrepresentations and innuendoes' " and "had to make something up." (*Emerson*, 97 Ill. 2d at 497-98.) Based on additional errors in the trial, the close nature of the evidence against the defendant, and this allegation that a defense attorney had suborned perjury, the *Emerson* court reversed the conviction and remanded for a new trial.

We hold that the comments here did not rise to the level of error present in *Emerson*. Unlike the repeated and explicit statements in *Emerson*, there was only one comment here which only mentioned the defendants' attorneys. We do not read the remark by the assistant State's Attorney to mean that the defendants' attorneys suggested Donald's testimony. Further, the evidence in this case was not closely balanced, as it was in *Emerson*. The evidence against Sylvester was overwhelming, showing a planned gang retaliation against Roselle. While the evidence against Terry was less damning, because he did not leave the party promising to return and take revenge, it still was very strong. Therefore, *Emerson* is inapplicable to this case.

Moreover, the defendants have not shown how they were materially prejudiced by this isolated comment. The judge sustained the defense objection to the comment, directed the prosecutor to inform the jury that she was only discussing Donald, and gave the defense attorneys several opportunities to tailor what the jury would be told about the self-defense answer. After the sidebar, the prosecutor made it clear to the jury that self-defense had been raised before trial and that she was only discussing Donald's decision to tell his "little fairy tale." Therefore, we hold that Terry and Sylvester cannot show material prejudice from these prosecutor remarks.

■ Finally, Terry argues that the prosecutor committed reversible error when she commented on his possible sentence during closing argument. In her closing argument, the prosecutor discussed the law of accountability with regard to Terry. At the close of this discussion, the following occurred:

"ASSISTANT STATE'S ATTORNEY: And remember it's not your concern to be concerned about the sentencing of these individuals. You just have to decide if they are guilty or not of first degree murder and attempt murder. It's up to the judge to decide whether he wants to give the shooter less [sic] time than the person who is accountable.

DEFENSE ATTORNEY: I object to any reference to sentencing.

THE JUDGE: Sustain the objection. Ask the jury to disregard it."

The State concedes that this argument was improper, but asserts that it did not prejudice Terry. (See *People v. Gutirrez* (1990), 205 Ill. App. 3d 231, 564 N.E.2d 850.) We agree.

Terry cites only one case to support his argument on this point and makes no attempt to tie the law of that case to these facts. Terry has the burden of proving his contentions on appeal (*People v. Rosa* (1990), 206 Ill. App. 3d 1074, 1081, 565 N.E.2d 221), and has not given us any reason to find that the comment here rose to the level of reversible error. In fact, to the extent that the comment simply informed the jury that it should only consider guilt, and not punishment, the comment was a proper statement of the law. Moreover, there was strong evidence of Terry's guilt, Terry's immediate objection to this sentencing comment was sustained, and the jury was told to disregard the statement. Additionally, the jury was told that closing arguments are not evidence. Therefore, we do not see how Terry could have been materially prejudiced by this brief comment which the jury was immediately told to disregard.

For all of these reasons, we affirm the judgments of the circuit court.

Judgment affirmed.

McNAMARA and RAKOWSKI, JJ., concur.