(No. 64943.—■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CLYDE CORNELL PEGRAM, Appellee.

*Opinion filed September 22, 1988.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Roma Jones Stewart and Shawn W. Denney, Solicitors General, Mark L. Rotert and Terence M. Madsen, Assistant Attorneys General, and Thomas V. Gainer, Jr., Steven J. Zick, Nancy A. Donahoe, Kenneth T. McCurry, and James E. Fitzgerald, Assistant State's Attorneys, all of Chicago, of counsel), for the People.

Steven Clark and Michael J. Pelletier, Deputy Defenders, and Patricia Unsinn, Assistant Defender, of the Office of the State Appellate Defender, all of Chicago, for appellee.

JUSTICE WARD delivered the opinion of the court:

The defendant, Clyde Cornell Pegram, was convicted of armed robbery following a jury trial in the circuit court of Cook County and was sentenced to 12 years' imprisonment. On appeal, the appellate court reversed the conviction and remanded for a new trial. The appellate court held that the defendant did not receive a fair trial because the jury was instructed neither on the defense of compulsion nor on the State's burden of proof when a defense of compulsion was raised. (152 Ill. App. 3d 656, 661.) The appellate court also held that the defendant had received ineffective assistance of counsel. The State filed a petition for leave to appeal to this court, which we allowed. 107 Ill. 2d R. 315.

Pegram was charged with the January 9, 1982, armed robbery of John Mackin, the owner of Erin's Glen Pub, a restaurant and bar on West Montrose Avenue in Chicago. Mackin testified that he arrived at the Pub shortly after 5 a.m. and parked his car near the tavern's

front door. He went to the basement office to count the previous night's receipts and shortly thereafter he heard a knock on the front door. Mackin recognized the defendant, who had previously come to the Pub about 20 times to help Mackin's porter, Bob Tatum, with his chores. Prior to this, Pegram had never come to the Pub without Tatum. When Mackin asked Pegram why he had come so early (Tatum and the defendant usually arrived between 6 and 7 a.m.), the defendant explained that Tatum would arrive later as his car had broken down, but he had sent Pegram to the Pub to begin work. Mackin let the defendant into the Pub and returned to his basement office, while the defendant began cleaning chores by taking the trash to the rear of the building.

The defendant testified that when he unlocked the back gate, two men holding guns and wearing masks over their faces entered through the gate. One of the men told Pegram to back up, pointed a gun at his head, and said he would blow out his brains if he did not do what he said. The men asked who else was in the Pub, and Pegram told them his boss was there. Pegram testified they then put a gun to his head and told him to lead them to his boss. He led them to Mackin's office.

At the office, one of the masked men entered and put a gun to Mackin's head, ordering him to lie on the floor and empty his pockets. The defendant stood at the entrance to the small office and the robbers entered it. Mackin testified that after he emptied his pockets of between $900 and $1,000, the defendant opened the door to the freezer across from his office door and all three men pushed Mackin into the freezer and locked the door. The defendant, however, testified that one robber pointed to the freezer and asked what it was. The defendant told him it was the freezer, and the robber ordered him to open the door. The robbers, Pegram testified, then ordered Mackin into the freezer. Pegram testi-

fied that Mackin was not pushed into the freezer but that once Mackin was inside, the robbers ordered Pegram to close the door. The defendant said nothing during the time the other men were in the office nor did Mackin hear the others say anything to the defendant.

Once Mackin was inside the freezer, Pegram said the robbers ordered him to lie, face down, on the floor, while one robber stood over him with a gun and the other one ransacked the office. The robbers then asked the defendant if Mackin had a car and, when told he had, ordered Pegram to take them to it. While walking to the car, the defendant testified that the robbers had a gun pointed at him. He was told to get into the back of Mackin's station wagon and lie on the floor, which he did. They drove off and the robbers let him out of the car on an expressway about 40 minutes later, but Pegram did not recall which expressway. The robbers told him that they knew who he was and they would be able to kill him.

Mackin waited about 15 minutes and then smashed open the freezer door with an empty beer barrel. He said he got a gun and ran upstairs, but no one was in the building. The money on his desk and his car were gone. He did not see which man took the money from the floor or the desk, as it was taken while he was locked inside the freezer. The defendant did not return to the Pub nor did he telephone or contact Mackin. Mackin notified the police of the robbery and later identified Pegram from a police photograph.

Pegram testified that he knew neither of the men and he was not able to see the men's faces because they wore masks. The defendant testified he did not notify the police because, he said, he had had a bad experience with the police on a 1974 felony conviction and was afraid that, as he was black and the two robbers were black, the police might believe he was involved in the crime. He testified, "And I was frightened that I was

going to be convicted for something or prosecuted for something I had nothing to do with. *** Not only for that, but the two men threatened my life. They were talking about they knew about me. I didn't know how much they knew about me." He denied arranging the robbery or receiving any of the proceeds from it. He said he was not a willing participant in the crime and said yes on direct examination when asked, "at all times during the robbery were you acting under duress and in fear of your life?"

A detective who investigated the robbery testified that he learned through Tatum where Pegram lived in Chicago. Mackin's car was recovered by the police a short distance from Pegram's home. The investigator obtained a photograph of Pegram from the Chicago police department, which Mackin identified as a photo of Pegram. After unsuccessfully trying to locate the defendant in Chicago, a warrant was issued for his arrest and placed with the National Crime Information Center so that if Pegram were to be held by the police anywhere in the United States, they would know of the outstanding warrant. After the robbery in January 1982, Pegram testified, he remained in Chicago, living with friends until December 1983, when he went to Youngstown, Ohio, to visit his family. He and his brother went to Buffalo, New York, to visit relatives for New Year's Eve and later set out for Detroit by way of Canada to visit other relatives. His identification card was checked at the Canadian border, and he was arrested on the outstanding warrant for armed robbery on April 10, 1984, at the Canadian border. Chicago police returned him to Chicago.

The State contends that the appellate court erred in reversing the conviction. As stated earlier, the appellate court concluded that the failure to instruct the jury on the defense of compulsion and on the State's burden of proof with respect to this defense (Illinois Pattern Jury

Instructions, Criminal, Nos. 24—25.21, 24—25.21A (2d ed. 1981) (IPI Criminal 2d)) constituted error under Supreme Court Rule 451(c) (107 Ill. 2d R. 451(c)). The State says that the defendant failed to preserve the issue for review, as he did not object to the instructions that were given or to the failure to instruct, did not tender the instructions on compulsion, and did not raise the issue in his post-trial motion.

Replying, the defendant contends that his testimony raised the defense of compulsion and that the jury should have been instructed on the defense and the State's burden of proof on this defense. The defendant argues, citing *People v. Ogunsola* (1981), 87 Ill. 2d 216, and *People v. Berry* (1984), 99 Ill. 2d 499, that the omission of the two instructions here resulted in a failure to inform the jury of an essential element of the State's burden of proof. The omission, he contends, was an error so grave that our rule on substantial defects in instructions should be applied rather than the rule of waiver on which the State relies. Our Rule 451(c) provides that "substantial defects [in instructions in criminal cases] are not waived by failure to make timely objections thereto if the interests of justice require." 107 Ill. 2d R. 451(c).

Compulsion is conduct performed under the threat of imminent infliction of death or great bodily harm, which the person reasonably believes will be inflicted if the conduct is not performed. (Ill. Rev. Stat. 1983, ch. 38, par. 7—11(a).) Compulsion is an affirmative defense which would exculpate an accused, if the trier of fact believed that the elements of compulsion had been proven. (Ill. Rev. Stat. 1983, ch. 38, pars. 7—11(a), 7—14.) Our Criminal Code of 1961 provides that an affirmative defense "means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon." (Ill. Rev.

Stat. 1983, ch. 38, par. 3—2(a).) If an affirmative defense is raised, "then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense." Ill. Rev. Stat. 1983, ch. 38, par. 3—2(b).

The defendant did not deny that he was present when the robbery occurred, but testified that he was forced, at gun point, to lead the robbers to Mackin, open the freezer door, lie on the floor, and then lead the robbers to Mackin's car. This testimony certainly satisfied the requirement that a defendant, to raise an affirmative defense, "must present some evidence thereon." (Ill. Rev. Stat. 1983, ch. 38, pars. 3—2(a), (b).) The principal contested issue here was whether the defendant had been forced, under threat of immediate harm, to participate in the robbery. Yet, no jury instruction given addressed the issue raised by the defense evidence: whether Pegram acted under compulsion, reasonably believing he was in fear of immediate bodily harm or death during the armed robbery. On this record it cannot be said that the jury, not having been instructed on the defense of compulsion, knew that the defendant's testimony concerning his fears of immediate harm and being forced by the two masked men to do the described acts could provide a defense to the charge of robbery. The jury was not informed that the prosecution had the burden of proving beyond reasonable doubt, not only the elements of armed robbery, but also that Pegram was not compelled in his conduct. (*People v. Reddick* (1988), 123 Ill. 2d 184; *People v. Berry* (1984), 99 Ill. 2d 499, 505.) "Fundamental fairness includes, among other things, seeing to it that certain basic instructions, essential to a fair determination of the case by the jury, are given." (*People v. Ogunsola* (1981), 87 Ill. 2d 216, 222 (finding grave error in a jury instruction for a deceptive practices charge that did not state that the defendant must have had "the intent

to defraud").) In *Ogunsola* this court said that the omission there "removed from the jury's consideration a disputed issue essential to the determination of defendant's guilt or innocence." (87 Ill. 2d at 223.) The same can be said here. The jury should have been instructed on the compulsion defense and the State's burden of proof for that defense; we judge that the failure to do so was serious error.

It is important to note that all the instructions given were those submitted by the State, none of them regarding compulsion. The court observed: "None were submitted by the defense." The State, in an effort to overcome the absence of an instruction on compulsion, argues that the defendant's counsel alluded to the defense of compulsion several times in his opening statement, in the examination of witnesses, and in his closing argument. The argument must fail, for instructions to the jury on the law must come from the court, not from counsel.

The reversal of the conviction here will be affirmed. Our holding, however, is that the failure of the defendant's attorney to tender an instruction on the defense of compulsion and on the prosecution's burden of proof for that defense must be regarded as constituting ineffective assistance of counsel. This critical omission so prejudiced the defense as to deny the right of the accused to a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504.) As we base our affirmance of the reversal of the defendant's conviction on the violation of his right to the effective assistance of counsel, we need not consider whether Rule 451(c) was applicable because of the attorney's failure to tender the critical instruction.

The defendant, for his part on this appeal, says he was denied a fair trial through the State's cross-examination in disregard of his fifth amendment right to remain silent and sixth amendment right to have counsel

present during interrogation. As there will be a retrial of this cause, it is appropriate to consider the defendant's complaint. The State's response to the defendant is that any error was waived and that the challenged questions were proper following the defendant's testimony on direct examination. The defendant concedes that the issue was not preserved for appeal, but asks that we regard it as plain error under our Rule 615(a) (107 Ill. 2d R. 615(a)). The appellate court rejected the defendant's argument. 152 Ill. App. 3d at 662.

Questions which developed the issue of post-arrest silence were begun by the defendant's attorney in cross-examining the detective who investigated the robbery. The lawyer asked if the detective had talked to the defendant when they traveled from Buffalo to Chicago. The detective replied he had asked the defendant if he wanted to talk about the crime, but the defendant said he preferred to talk to an attorney before he spoke to the police. Later, during the defendant's cross-examination, his counsel asked him if he had talked to the police concerning the robbery, and the defendant said "No." On cross-examination, the prosecutor asked the defendant if he had said on direct examination that the detective had not asked him any questions when returning to Illinois. The defendant said that the detective did ask questions, but that he did not answer them. The prosecutor then commented that it was the defendant's right not to discuss the matter, and the defendant agreed. The prosecutor asked the defendant to agree that his direct testimony at trial was the first time that he had told his story about being coerced into the acts on the day of the robbery. After objections and rephrasing of the question, the defendant agreed. In closing argument, the prosecutor commented that the defendant had not previous to trial presented his version of the crime.

Prosecutorial questions and remarks concerning a defendant's post-arrest silence are generally improper (*Doyle v. Ohio* (1976), 326 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240), with exception being made for impeaching the defendant's testimony with a prior inconsistent statement (*People v. Rehbein* (1978), 74 Ill. 2d 435), which does not apply here. While we recognize that the question regarding the defendant's post-arrest silence was broached by the defendant's attorney, we judge that the prosecutor's inquiry and comment on the defendant's failure to offer his exculpatory explanation at the time of arrest or any time before trial must be considered a violation of the *Doyle* holding. This error cannot be said to be harmless beyond a reasonable doubt and is, of course, to be avoided on retrial.

For the reasons stated, the judgment of the appellate court, reversing the defendant's conviction and remanding for a new trial, is affirmed.

*Affirmed.*

JUSTICE STAMOS took no part in the consideration and decision of this case.