THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KEITH PETERSON, Defendant-Appellant.

First District (2nd Division)   No. 1—91—2271

Opinion filed June 1, 1993.

Daniel J. Stohr, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald T. Lyman, and Cory J. Pollack, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant was convicted by a jury of possessing a controlled substance with intent to deliver. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2).) He was sentenced to six years in custody of the Department of Corrections.

On appeal defendant raises as issues whether (1) the stop, search and seizure involved in his arrest was constitutional; (2) his right to remain silent upon arrest was improperly considered by the jury; (3) prosecutorial argument deprived him of a fair trial; and (4) he was denied effective assistance of counsel. We affirm.

At trial, Chicago police officer Russ Willingham testified that on December 3, 1988, at about 12:45 a.m. he and his partner, Officer Kevin Gyrion, received a radio transmission of "[a] man shot at 43rd and Lamond." As the officers approached the area, they observed a vehicle, without license plates, being driven at a fast speed from the area where the shooting reportedly had occurred. They activated their lights and attempted to pull the vehicle over. After pursuit of one block, they stopped the vehicle, which contained four people.

When the officers alighted from the squad car, Officer Willingham walked to the passenger side of the subject vehicle and Officer Gyrion went to the driver's side. Willingham observed defendant, who was sitting on the rear passenger side, bend forward. As defendant exited the vehicle, he placed something into his right pocket. Defendant then attempted to walk away. Willingham stopped him and brought him back to the car. Willingham saw a large clear plastic bag containing money and a white substance protruding from defendant's right coat pocket. After taking the bag, Willingham discovered inside individual

packages of white powder, later found to be 37 in number, of which 36 contained cocaine, commingled in the larger bag with currency, later found to be $209 in small bills. Willingham also related that as Gyrion was searching the driver, the driver pushed Gyrion and fled.

During the course of their investigation, the officers found no connection between that car or its occupants and the radio shooting advisory. No weapons were recovered. Officer Willingham identified defendant in court.

Officer Gyrion's testimony substantially tracked that of Officer Willingham, stating that the car carrying the four individuals was moving extremely fast for a residential street, and that the car would not pull over for one block after they activated the squad's lights and siren. Once the driver exited the car, he conducted a pat-down search of the driver's jacket and then his pants, looking for a gun or weapon. A huge bulge was found in the driver's groin area. Gyrion unzipped the driver's pants and noticed a clear plastic baggie containing a white powdery substance. The driver pushed Gyrion and ran. Gyrion did not chase the driver because he did not want to leave his partner with the remaining three people. When the car was stopped, Gyrion did not know whether the car was connected to the shooting. Gyrion identified defendant in court.

Chicago police department chemist Gwendolyn Brister testified as an expert in forensic chemistry. She analyzed the substances taken in the stop and search and determined that 36 of the 37 packages contained about 18 grams of cocaine. The State rested.

For the defense, Ronald Lee testified that on December 3, 1988, at about 12 a.m., he was walking with his brother Mario Lee on 43rd Street toward their home located at 4645 South Lamond. They were offered a ride in a car driven by a man named Frank, and defendant, who was in the front passenger seat. Defendant got in the back and Ronald got in the front seat. Mario got in on the driver's side in the back. Neither defendant nor Frank was wearing a coat. One-half block from the Lees' house, a police car pulled them over. The officers asked them to step out of the car with their hands up. As they were exiting the car, defendant grabbed one of two coats on the back seat and put it on. One officer searched Frank. When he pulled Frank's pants open a plastic bag fell out. Frank shoved the police officer and ran. The police then searched the other three. Ronald never saw defendant attempt to walk away from the scene or the police officer grab defendant and tell him not to walk away.

On cross-examination, Ronald testified that he has been defendant's friend for 12 or 13 years. Ronald previously had been convicted

of two felonies and currently was serving a sentence at Weston Illinois Correctional Center. Mario also was in prison. Frank ran from the police without a coat.

Defendant testified that on December 3, 1988, as he left his girlfriend's house, he saw Frank starting his car in a parking lot. Defendant put his coat on the back seat. After driving less than two minutes, defendant saw Ronald and Mario. Defendant told Frank to stop because they lived on his block. Ronald and Mario got in the car. Five minutes later, the police pulled the car over. When police asked defendant to get out, he was given police permission to put his jacket on, which he did. Defendant heard another officer utter "halt." Frank was running down the street and pulling his pants up. Defendant was instructed to put his arms on the car, and an officer searched him. After a second search, the officer pulled a plastic bag out of the jacket defendant wore, which was not his, but Frank's. Defendant told this to the police. He never tried to walk away.

During cross-examination, defendant testified that when Frank was running down the street he was not wearing a jacket. Defendant's own jacket was still in the car.

Defendant rested.

In rebuttal, Officer Gyrion testified that after the three people were placed under arrest, he thoroughly searched the automobile. He was looking for some kind of weapon because he believed that the arrested persons had something to do with the shooting. No jacket was found.

The parties stipulated that on March 30, 1989, defendant was found guilty of the offense of possession of a stolen vehicle.

The State rested.

The jury found defendant guilty and he was sentenced as previously stated. Defendant appeals.

I

Defendant maintains that the stop and seizure of the car, defendant, and the evidence was without probable cause, was unconstitutional and should have been suppressed.

A

■ Defendant's first contention, that the police did not have specific articulable facts required to stop the vehicle, is without support. As Officers Willingham and Gyrion approached the area of an alleged shooting, they observed a vehicle, without license plates, being driven at a fast rate of speed and coming from the area where the reported

shooting occurred. A police officer may stop and temporarily detain an individual for the purpose of conducting a limited investigation if the officer is able to point to specific and articulable facts which, when taken together with reasonable inferences drawn therefrom, would justify the investigative intrusion. (*People v. Martinez* (1990), 206 Ill. App. 3d 813, 822, 564 N.E.2d 1271.) An objective standard is to be used in determining whether a stop is reasonable, namely, whether the facts available to the officer at the moment of the stop would warrant "a man of reasonable caution" to believe that the stop was appropriate. (*Martinez*, 206 Ill. App. 3d at 822.) Although a mere hunch is insufficient, a police officer's stop may be proper under circumstances which would be insufficient to establish probable cause for an arrest warrant. (Ill. Rev. Stat. 1989, ch. 38, par. 107—14 (now 725 ILCS 5/107—14 (West 1992)); *Martinez*, 206 Ill. App. 3d at 822.) Under the circumstances first noted, the police here had ample reason to stop the speeding vehicle, having no license plates, and coming from the area of the reported shooting.

B

Next, defendant contends that a pat-down search of any of the car's occupants was unjustified. According to defendant, after the vehicle was pulled over, an officer searched him twice.

The fact that an officer has reason to stop a citizen does not necessarily justify the further intrusion of a search for weapons. (*People v. Smithers* (1980), 83 Ill. 2d 430, 415 N.E.2d 327.) The officer may conduct a pat-down search only if he has reason to believe that he is dealing with an armed and dangerous individual. The officer needs only the reasonable belief that either his safety or that of others is in danger. (Ill. Rev. Stat. 1989, ch. 38, par. 108—1.01 (now 725 ILCS 5/108—1.01 (West 1992)); *Smithers*, 83 Ill. 2d 430, 415 N.E.2d 327.) Although defendant insists that there was no evidence of danger and, therefore, no right to conduct a pat-down search, the circumstances which led police to stop the car, namely, a speeding vehicle, without license plates, coming from an area in which a reported shooting took place, were sufficient to justify a pat-down search for weapons of the vehicle's occupants.

C

Defendant urges that even where the initial stop is valid and where there is reasonable suspicion that the subject is armed and dangerous so the pat-down is justifiable, removal of the clear plastic bag

from defendant's pocket still required the officer to have reasonable grounds to suspect the bag was a weapon.

■ Officer Willingham testified that he observed defendant bend forward after the vehicle was stopped and saw him place something in his right pocket as he emerged from the car. He testified further that he saw a large, clear plastic bag protruding from defendant's right pocket and noted that the bag contained a white substance and money, the substance later having been identified as cocaine. Police officers with prior justification to stop a vehicle and conduct a pat-down search of its occupants, as here, may seize evidence in plain view, such as Willingham saw protruding from defendant's pocket, beyond the scope of the initial search. *People v. Edwards* (1991), 144 Ill. 2d 108, 579 N.E.2d 336; *People v. House* (1986), 141 Ill. App. 3d 298, 490 N.E.2d 212; *People v. Gunsaullus* (1979), 72 Ill. App. 3d 440, 391 N.E.2d 142.

■ From the foregoing facts, defendant's further assertion that the stop, seizure and search violated his constitutional rights as a mere pretext to investigate him and the other occupants of the car because they were African-Americans approaching a white neighborhood is groundless.

## II

Defendant contends that he was convicted in violation of his constitutional rights to remain silent and to a fair trial when the jury was improperly allowed to consider against him his silence upon arrest.

During cross-examination of Officer Willingham, defense counsel elicited the following:

"Q. Now did Mr. Peterson tell you that those drugs were not his?

A. No, sir.

Q. Never said anything?

A. No, sir.

Q. Just stood there?

A. Yes, sir."

On redirect examination the prosecution pursued the same line of questioning:

"Q. And counsel just asked you about whether or not the [d]efendant said anything about the drugs not belonging to him, and you said no. Is that right?

A. Yes, Ma'am.

Q. Did he say anything to you about the jacket not belonging to him?

A. No, Ma'am.

Q. He didn't say anything at all. Is that right?

A. No, Ma'am.

Q. I'm not sure that's clear. Did he say anything to you at all?

A. [Response not audible.]

Q. Once you found the bag of drugs did [defendant] say anything to you at all regarding the drugs or the jacket?

A. Not that I recall."

Defendant avers that the officer's testimony improperly and inevitably invited the jury to infer that defendant's testimony, which disclaimed ownership of the jacket and drugs, was a recent fabrication.

The United States Supreme Court in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (*Doyle*), upon which defendant relies, held that prosecutorial questions and remarks concerning post-arrest silence generally are improper. (See *People v. Pegram* (1988), 124 Ill. 2d 166, 529 N.E.2d 506.) Defendant maintains defense counsel's initial evocation of the officer's statements does not operate as a license to allow the State then to inquire as to defendant's silence (*Pegram*, 124 Ill. 2d at 176), and the State's elicitation of the testimony was plain error and not harmless beyond a reasonable doubt. See *Pegram*, 124 Ill. 2d at 176.

█ The record demonstrates, however, that defense attorney's opening statement, and subsequent questioning of Officer Willingham about defendant's statements at the time of arrest, invited prosecutorial inquiry, particularly with respect to defense counsel's statement that the jacket did not belong to defendant and his cross-examination questioning involving the period of time at issue. Defendant cannot complain about the redirect examination. See *People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44; see also *Pegram*, 124 Ill. 2d 166, 529 N.E.2d 506.

Further, defendant testified he told police that the packets of powder taken out of the jacket he was wearing were Frank's because it was Frank's jacket. Based upon this statement, the State maintains that the testimony regarding defendant's silence was properly elicited to show defendant never made the statement. (*People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39.) Defendant's trial testimony was inconsistent with statements police testified were made to them; the prosecution was entitled to impeach defendant's trial testimony by noting his failure to give similar statements to the police as those to which he testified. (*People v. Ridley* (1990), 199 Ill. App. 3d 487, 557 N.E.2d 378.) *Doyle* does not preclude examination of prior inconsis-

tent statements. (*Anderson v. Charles* (1980), 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182; *People v. Adams* (1981), 102 Ill. App. 3d 1129, 1132, 430 N.E.2d 267.) There was no *Doyle* violation here.

## III

Defendant asserts that prejudicial prosecutorial argument deprived him of a fair trial in violation of due process of law by comparing the "war on drugs" to the war on Iraq and inviting the jury to speculate as to distribution of drugs to children.

In closing argument, the prosecutor mentioned the war against Iraq in introduction to the war on drugs. In rebuttal, the State implied that convicting defendant would be a step against the war on drugs. Additionally, the State referred to what was reported through the media. Defendant maintains that these comments improperly invited the jury to convict him on the basis of patriotism and because of what it saw on television. Defendant adds that these comments were especially damaging in that the argument was made within weeks of the conclusion of the Iraqi war. Defendant also points to the State's assertion in closing argument:

> "[T]hese 36 packets are 36 different possibilities of where this could end up. Is it going to go to a kid in a school yard? Is it going to go to somebody who's going to kill somebody over drugs? It happens every day."

Defendant maintains that these comments invite the jury to draw specific prejudicial conclusions about defendant based upon material outside of the record, which had the cumulative impact of depriving him of a fair trial.

The State asserts that the issue was waived because no objection was made at trial and, further, the argument was not so inflammatory that defendant could not have received a fair trial or so flagrant as to threaten the deterioration of the judicial process. (*People v. Owens* (1984), 102 Ill. 2d 88, 464 N.E.2d 261.) The State also avers that the evidence was not so closely balanced that a possibility existed that an innocent person was wrongly convicted. (*People v. Herrett* (1990), 137 Ill. 2d 195, 209, 561 N.E.2d 1.) We agree.

■ The prosecutor's remarks relating to the war on drugs were permissive comments on the evils of crime and fearless administration of justice and, therefore, did not constitute prosecutorial misconduct. (*People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357.) The remarks did not compare defendant to the parties in the Iraq conflict. In fact, defense counsel aptly responded:

"I believe that in every war as in the war in Iraq there are civilian casualties, people who get caught up in the cross fire. Just as in the war in Iraq, there are civilian casualties in the war on drugs. Mr. Keith Peterson is one of those casualties. He's not a foot [soldier]. Mr. Peterson is a casualty. But you Ladies and Gentlemen have the opportunity right now not to make him a prisoner of war, and I ask you please to do that."

The State urged the jury to examine and use the evidence presented to determine defendant's guilt. The remarks were not made to inflame the passions of the jury and did not prejudice defendant.

A prosecutor is allowed wide latitude in closing arguments. (*People v. Clay* (1984), 124 Ill. App. 3d 140, 463 N.E.2d 929.) The prosecution properly may dwell upon the evil results of crime and urge the fearless administration of the law. (*Harris*, 129 Ill. 2d at 159; *Clay*, 124 Ill. App. 3d 140, 463 N.E.2d 929.) Prosecutorial comment on the evidence and the drawing of reasonable inferences is proper. *Clay*, 124 Ill. App. 3d at 149.

The prosecutorial comments here did not result in substantial prejudice or affect the outcome of the trial. (*People v. Rainone* (1988), 176 Ill. App. 3d 35, 41, 530 N.E.2d 1026.) The prosecutor did not mistake evidence or implicate other specific rights of defendant in this case. The circuit judge told the jury that closing arguments were not evidence and written instructions to that effect were given to the jury when it began its deliberations. We find no error.

IV

Defendant maintains he was denied effective assistance of counsel by reason of any and all of the following alleged unreasonable acts and omissions by his trial counsel: (a) failure to suppress the fruits of the aforesaid stop, search and seizure; (b) elicitation of the offending testimony in the alleged *Doyle* violation; (c) failure to object to the offending prosecutorial argument, which is the basis of point III; (d) failure to impeach, by omission, testimony of a police officer that the search of defendant followed the driver's flight from the car, where there is no reference in the police reports to flight of any person; and (e) failure to call copassenger Mario Lee to testify on defendant's behalf.

A

To prevail on an ineffective assistance of counsel claim, defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability

that the result would have been different had there not been ineffective assistance. (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693-94, 697-98, 104 S. Ct. 2052, 2064, 2068 (*Strickland*); *People v. Eddmonds* (1991), 143 Ill. 2d 501, 510-11, 578 N.E.2d 952; *People v. Bell* (1987), 152 Ill. App. 3d 1007, 505 N.E.2d 365.) Where defendant contends, as here, that counsel's failure to articulate a fourth amendment claim was ineffective assistance, defendant must show that such claim is meritorious and that the verdict would have been different absent the evidence that should have been excluded. *Kimmelman v. Morrison* (1986), 477 U.S. 365, 374-75, 91 L. Ed. 2d 305, 318-19, 106 S. Ct. 2574, 2582.

The State claims that defendant has waived his right to challenge the stop and seizure of evidence based on fourth amendment grounds because he failed to argue the issue before the circuit court. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124; see *People v. Moore* (1969), 43 Ill. 2d 102, 251 N.E.2d 181.) Alternatively, the State maintains that defendant's failure to argue the reasons now presented render it impossible to determine the validity of defendant's claims based on the present state of the record. (See *People v. Calderon* (1981), 101 Ill. App. 3d 469, 428 N.E.2d 571 (*Calderon*).) The record reveals, however, that a motion to quash arrest and suppress evidence was filed, but not argued, one year and four months prior to trial.

Defendant responds that there was no knowing waiver; the motion was sufficiently preserved because it was filed before trial, presented in a post-trial motion and argued in the motion for a new trial. He adds that this claim is distinguishable from *Calderon* because here counsel asked for an evidentiary hearing in the post-trial motion.

Whether or not a motion to suppress should be filed in a criminal case is a matter of trial tactics and has little bearing on competency of counsel. (*People v. Atkins* (1987), 161 Ill. App. 3d 600, 609, 515 N.E.2d 272; *People v. Johnson* (1986), 143 Ill. App. 3d 34, 492 N.E.2d 574.) A reviewing court will not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy. (*Atkins*, 161 Ill. App. 3d at 609.) The decision of whether or not to file a motion to suppress is best left to trial counsel's discretion. (*People v. Bryant* (1989), 128 Ill. 2d 448, 458, 539 N.E.2d 1221.) To prevail on a claim that his trial counsel was ineffective for failing to file a motion to quash or suppress, defendant must show that the motion would have been granted and that the trial outcome would have been different if the evidence had been suppressed. *People v. Bennett* (1991), 222 Ill. App. 3d 188, 201, 582 N.E.2d 1370; *People v. Mendez* (1991), 221 Ill. App. 3d 868, 873, 582 N.E.2d 1265.

■ Defendant argues that the police had no reason to conduct the "investigatory stop" and subsequent "protective frisk" of defendant and, therefore, their actions were in violation of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Defendant further contends that under the exclusionary rule, the evidence recovered as a result of the alleged improper conduct should have been suppressed as a fruit of his illegal seizure. We find, however, that the stop of the vehicle in which defendant was a passenger was a valid traffic stop, particularly in view of the reported shooting and the direction of the vehicle's travel away from the shooting situs. (See *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605.) After the stop, the police observed defendant in possession of money and what proved to be cocaine protruding from his pocket in "plain view." The seized money and cocaine were therefore admissible and any motion to suppress on fourth amendment grounds would have been futile. There was no error.

B

Defendant next contends that he was denied effective assistance of counsel when his attorney elicited testimony from a witness on cross-examination pertaining to defendant's failure to make exculpatory statements at the time of his arrest.

■ The defense argued from the outset of the trial that the jacket defendant was wearing at the time of his arrest did not belong to him. His theory of the case was that he had mistakenly donned the driver's jacket after the vehicle had been stopped and had no knowledge that drugs were in the jacket. Defense counsel asserted in his opening statement that defendant had made statements to police at the time of his arrest that were both exculpatory and consistent with the defense theory. During cross-examination of Officer Willingham, the defense attempted to elicit these prior exculpatory statements from the officer as further proof and corroboration of defendant's lack of knowledge; however, the officer denied that defendant made any such statements. Notwithstanding the officer's testimony, the defense continued to pursue its theory through direct examination of both Ronald Lee and defendant. Testimony from Ronald Lee corroborated defendant's claim that the coat did not belong to defendant. When defendant took the stand, he testified that he told the officers that the drugs and jacket belonged to the driver, who had fled the scene.

Cross-examination of Officer Willingham sought to elicit testimony corroborating defendant's testimony. The questions clearly were

intended to aid defense strategy. If the defense had not made such an inquiry, given its theory, counsel's conduct might have been deficient. Defendant here has not overcome the burden of showing actual incompetence and prejudice. (See *People v. Puente* (1984), 125 Ill. App. 3d 152, 465 N.E.2d 682.) Defense inquiry did not so undermine the proper functioning of the adversarial process that the trial failed to produce a just result. (See *Strickland v. Washington* (1984), 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2063-64.) Defendant was not denied effective assistance of counsel in this regard.

C

Defendant insists that he was denied effective assistance of counsel when his attorney failed to object to allegedly improper remarks made by the prosecutor during closing argument and rebuttal. We have already addressed these remarks under point III of this opinion.

Even were we to assume, *arguendo*, that defense counsel's performance in this regard was deficient, it did not undermine the outcome of the trial when analyzed under the second prong of *Strickland* (466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052). Whether a prosecutor's comments made during closing argument constitute prejudicial error depends upon whether the jury would have reached a contrary verdict had the improper comments not been made. (*People v. Rainone* (1988), 176 Ill. App. 3d 35, 41, 530 N.E.2d 1026.) A conviction will not be disturbed on review unless the remarks constitute a material factor in the conviction or result in substantial prejudice of defendant. A reviewing court looks to the content of the language used, its relationship to the evidence, and the effect of the argument on the rights of the accused to a fair and impartial trial. *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.

■ The prosecutor's remarks in the case *sub judice* were general comments urging the jury to comply with the fearless administration of justice. Given the substantial evidence of defendant's guilt, there was no possibility that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

D

Lastly, defendant argues that he was denied effective assistance of counsel when his attorney failed to impeach the testimony of Officer Gyrion during his cross-examination as to an omission he made in a police report prepared at the time of defendant's arrest and failed to call Mario Lee as a defense witness.

In this regard, defendant claims first that the failure to impeach Officer Gyrion on his omission from the police report that the driver of the vehicle fled the scene constituted ineffective assistance. Gyrion's failure to include the driver's flight in a police report was completely irrelevant to defendant's guilt or innocence, however; any attempted impeachment relating to this fact would have added nothing to defendant's case. Further, testimony elicited from both Ronald Lee and defendant himself corroborated Gyrion's account, since both testified that the driver of the vehicle fled the scene. Counsel's declination to attempt impeachment of Gyrion by reason of his omission was a proper trial tactic and cannot be judged unreasonable by the objective standard of effective assistance of counsel.

Defendant next argues that his attorney's failure to call Mario Lee as a witness was ineffective assistance, because Mario could have corroborated defendant's trial testimony. It must be noted that Ronald Lee, Mario's brother, testified that Mario was incarcerated in prison at the time of the trial. Defense counsel's reluctance to call Mario as a witness was understandable. Also, Mario's past convictions properly could have been admitted for purposes of impeachment. Had he been called as a witness, it is improbable that Mario's testimony would have influenced the outcome of the trial. Whether a witness should or should not be called is a tactical and strategic decision in which defense counsel is given wide latitude. (*People v. Flores* (1989), 128 Ill. 2d 66, 85-86, 538 N.E.2d 481; see also *Strickland,* 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) The absence of Mario under the foregoing circumstances comes well within defense counsel's permissible latitude here.

For the reasons set forth above, we find no reversible error and affirm.

Affirmed.

McCORMICK, P.J., and SCARIANO, J., concur.