NOTICE
Decision filed 04/05/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220161-U

NO. 5-22-0161

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 21-CF-77 |
| | ) | |
| SHELBY M. DYKES, | ) | Honorable |
| | ) | Phoebe S. Bowers, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: Because the record on appeal was inadequate to address defendant's claims of ineffective assistance of counsel, the defendant's conviction and sentence are affirmed.

¶ 2    Following a jury trial, the defendant, Shelby M. Dykes, was found guilty of possession of methamphetamine, less than five grams (720 ILCS 646/60(a), (b)(1) (West 2018)). The judge sentenced her to 24 months of probation, with varying conditions, and ordered her to pay $3240 in court assessments. The defendant appealed, alleging ineffective assistance of her trial counsel for failure to file a motion to suppress evidence and failure to file an assessment waiver.

¶ 3                    I. BACKGROUND

¶ 4    Deputy Matthew Hunt was assigned to work the interstate as a detective in the criminal interdiction unit. The unit's primary objective was to make a high amount of traffic stops in an

1

effort to combat drug activity. On December 7, 2020, at 3:19 p.m., Deputy Hunt initiated a traffic stop of the defendant's truck after observing unspecified traffic violations.

¶ 5    The traffic stop occurred in the parking lot of a gas station after the defendant had exited the highway and pulled into the gas station to use her phone. The deputy noted that the defendant was the only individual in the truck. He identified himself, informed the defendant of the traffic violations she had committed, and asked her for her registration, license, and insurance. The only paperwork the defendant provided to the deputy was her "identification."[1] Once he obtained the defendant's information, the deputy instructed her to sit in his vehicle and she obliged.

¶ 6    Although there is no dash camera footage of the actual traffic stop, there was video footage from inside Deputy Hunt's police vehicle that recorded the defendant's interactions with the deputies before and after the search of her truck (People's Exhibit 3). The entirety of this in-car video was not admitted into evidence; People's Exhibit 3 is merely a 21-second clip shown to the jury during the State's rebuttal. Nonetheless, both the defendant and the State make arguments based on additional footage, which is approximately 22 minutes long.[2] Several times throughout the video it fades out and fades back in.[3] There is no way to determine how much time elapsed during the period when the screen fades to black. There also was a four-minute video that recorded Deputy Hunt's canine conducting a sniff search around the perimeter of the defendant's truck.[4]

---

[1]There is nothing in the record to indicate what this identification consisted of.

[2]In reviewing the record of proceedings, the trial court only admitted the portion of the in-car video that was published to the jury. (R. 153-154). This is confirmed when the State returns after closing arguments and provides the trial court with a separate exhibit of just the 21-second clip, as requested. (R. 174). The disc provided to this court has both the 22-minute in-car video and the 4-minute video of the canine sniff, which appears to have been inadvertently included by the State.

[3]Although there is nothing in the record to confirm this, the fade-out and fade-in suggests that the video was intentionally edited in preparation for trial, possibly to delete inadmissible statements by the defendant.

[4]This video also was not admitted into evidence at trial but was included on the disc submitted to this court.

2

¶ 7    The full 22-minute in-car video discloses the following facts. Deputy Hunt asked the defendant about her driving and employment history. Another deputy can be seen on the video standing outside of the police vehicle on the passenger side. When Deputy Hunt asked the defendant why she was in the area, she explained that she had come to see a friend named Roy. When asked for Roy's last name, the defendant hesitated and told the deputy that she felt bad about providing that information, but then did so. The other deputy standing outside on the passenger side asked the defendant if she took medication on a daily basis, and she informed him she took Zoloft. This deputy told the defendant that she looked nervous because her hands, which were in her jacket pockets, were clenched and she had scratched her neck. The defendant confirmed that she was nervous.

¶ 8    Deputy Hunt began questioning the defendant about Roy. He told the defendant that she would receive warnings for having no insurance or registration and exited the vehicle. Another deputy got into the police vehicle with the defendant, presumably utilizing the in-car computer to begin issuing the warnings, while Deputy Hunt conducted the canine sniff around the perimeter of the defendant's truck. After the canine gave a positive alert, Deputy Hunt searched the interior of the defendant's truck.

¶ 9    Following the canine search, Deputy Hunt informed the defendant that he became suspicious after she hesitated to provide Roy's last name. Deputy Hunt explained that if the defendant had been meeting with a "law-abiding citizen" it would not have been a problem to provide his last name to the police. He further explained that these were his reasons for conducting the canine sniff.

¶ 10    At trial when the deputy was asked if he had developed probable cause to search the defendant's vehicle during his interaction with her, he responded, "Yes. I deployed my drug

3

sniffing dog, yeah." The deputy further testified that following the dog alert, the defendant remained seated in the police vehicle while he was searching the defendant's truck "based off of that probable cause."

¶ 11 During the search of the defendant's truck, the deputy looked inside the purse that had been lying next to the defendant and found a black box containing white powdery residue. Although the deputy had not seen the defendant pull her wallet out of the purse, he watched her put her wallet into the purse. The defendant initially told the deputy the purse did not belong to her, but she ultimately admitted it was hers.

¶ 12 Based on the deputy's training and experience, he suspected the white powdery residue to be narcotics. The substance field tested positive for methamphetamine, and it was later sent to the state crime lab where the substance tested positive for 1.6 grams of methamphetamine. The deputy also found foil and a colored glass pipe that he identified as drug paraphernalia, used to inhale or smoke methamphetamine or other illegal substances. The black box with the powdery white residue was found inside the purse. Although at trial the defendant denied owning or using the meth found in the black box, she did admit to prior use of methamphetamine during the 21-second clip that was shown to the jury. After the deputy found the contraband, he read the defendant her *Miranda* rights and placed her under arrest.

¶ 13 On cross-examination, the defense counsel asked the deputy the following six questions: whether he had searched the entirety of the defendant's vehicle, whether he recalled there being a lot of property in the defendant's vehicle, whether it appeared to him that the defendant's vehicle had recently been to a rummage sale, whether he specifically recalled a collection of purses or other women's bags in the bed of the defendant's vehicle, whether he believed the defendant to be under the influence at the time of their encounter, and whether he conducted a DUI investigation.

4

¶ 14    The defendant testified in her own defense. The bulk of her testimony focused on denying that the purse and black box found in the purse belonged to her. Additionally, the defendant testified that her fingerprints were not taken, and she did not provide a DNA sample.

¶ 15    The jury found the defendant guilty of possession of less than five grams of methamphetamine. The trial court sentenced the defendant to 24 months of probation, with varying conditions, and ordered her to pay $3240 in court assessments. The defendant timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, the defendant's first claim of error was that trial counsel was ineffective for failing to move to suppress evidence seized from the defendant's vehicle where the deputy prolonged the duration of the traffic stop to conduct a canine sniff. The defendant's second claim of ineffective assistance is based on trial counsel's failure to file an assessment waiver for which the defendant seeks remand to do so.

¶ 18    "Every defendant has a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and the Constitution of Illinois." *People v. Domagala*, 2013 IL 113688, ¶ 36. To prevail on an ineffective assistance of counsel claim, counsel's performance must be analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Id.* A defendant must show both (1) the objective unreasonableness of counsel's performance and (2) that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* Where the defendant's claims of ineffective assistance of counsel were not raised in the trial court below, our review is *de novo*. *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24.

5

¶ 19                              A. Failure to File Motion to Suppress

¶ 20    "[W]here an ineffectiveness claim is based on counsel's failure to file a suppression motion, in order to establish prejudice under *Strickland*, the defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15. Whether a suppression motion should be filed in a criminal case is a matter of trial tactics and has little bearing on the competency of trial counsel. *People v. Peterson*, 248 Ill. App. 3d 28, 38 (1993). "A reviewing court will not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics, or strategy." *Id.*

¶ 21    The defendant contends that a motion to suppress the evidence seized from her vehicle would have been successful, and would have resulted in a different outcome, where the police lacked reasonable suspicion to independently justify the canine sniff. The defendant further contends that the deputies impermissibly prolonged the duration of the stop by questioning the defendant about matters unrelated to the mission of the traffic stop.

¶ 22    "[P]olice officers do not need independent reasonable articulable suspicion of drug-related activity to perform a dog sniff because a dog sniff is not, in itself, either a search or a seizure within the meaning of the fourth amendment." *People v. Bujari*, 2020 IL App (3d) 190028, ¶ 49. Therefore, where the defendant is otherwise lawfully detained, the use of a drug dog and the subsequent discovery of contraband are not the products of an unconstitutional seizure. *Id.*

¶ 23    However, an otherwise lawful traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the seizure's mission. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). The "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission" which are the purpose of the stop and any related safety concerns. *Rodriguez*

6

*v. United States*, 575 U.S. 348, 354 (2015). The related safety concerns consist of ordinary inquiries incident to a traffic stop, including checking the driver's license, determining if there are outstanding warrants against the driver, checking the driver's criminal history, and inspecting the vehicle's registration and proof of insurance. *People v. Sanchez*, 2021 IL App (3d) 170410, ¶ 28. Although a canine sniff is not an ordinary incident of a traffic stop, one may be conducted during a lawful traffic stop without triggering the fourth amendment so long as it does not prolong the duration of the stop. *Id.* ¶ 29. In determining whether a traffic stop was prolonged beyond the time reasonably required to complete the mission of the stop, reviewing courts consider the totality of the circumstances, "looking specifically at the duration of the stop and the officer's diligence in fulfilling the purpose of the stop." *Id*.

¶ 24    "[A]sking questions unrelated to the purpose of the seizure is not unlawful as long as the questioning does not extend the time the defendant was detained." *Id.* ¶ 33.

¶ 25    As to the alleged success of the unargued suppression motion, the State counters that it is impossible to determine the length of the stop or the amount of time that elapsed after the defendant was pulled over where there were missing segments of the video throughout the time the defendant was inside the deputy's police vehicle and where the video does not contain time stamps. The State argues, therefore, that the defendant's claim of prejudice under *Strickland* is based on speculation and assumptions.

¶ 26    The State's argument is well taken. The record on appeal fails to contain sufficient facts to determine whether the traffic stop was prolonged beyond the time reasonably required to complete the mission of the stop from which we could determine whether a motion to suppress would have been meritorious. The record is also devoid of facts necessary to determine whether trial counsel was ineffective for failure to file an assessment waiver.

¶ 27 We note that the defendant's claims of ineffective assistance of counsel may be raised under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)), which would allow the defendant an opportunity to fully develop a record necessary to address her claims of ineffective assistance of counsel (see *People v. Bew*, 228 Ill. 2d 122, 135 (2008)).

¶ 28 The Illinois Supreme Court has acknowledged the difficulties facing reviewing courts in ruling on claims of ineffective assistance for failure to file a motion to suppress resulting from a record developed for trial rather than for a hearing on a suppression motion. *People v. Rowell*, 2021 IL App (4th) 180819, ¶ 37 (citing *Bew*, 228 Ill. 2d at 133-34). "In *Massaro v. United States,* 538 U.S. 500 *** (2003), the United States Supreme Court recognized that ineffective assistance of counsel claims are preferably brought on collateral review rather than on direct appeal." *Bew*, 228 Ill. 2d at 134.

¶ 29                                      III. CONCLUSION

¶ 30 Because we conclude that the record on appeal is insufficient to make a determination on the merits of the defendant's claims of ineffective assistance of counsel, we affirm the defendant's conviction and sentence.

¶ 31 Affirmed.